UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEBORAH BELLINA | CIVIL ACTION |
| VERSUS | NO. 19-13711 |
| LIBERTY MUTUAL INSURANCE COMPANY, ET. AL. | SECTION "R" (3) |

### ORDER AND REASONS

The Court has received from plaintiff Deborah Bellina a motion to remand this case to state court.[1] Because defendant Jason Johnston was improperly joined, the Court denies the motion.

## I. BACKGROUND

This case arises from a home-insurance dispute. A hailstorm allegedly damaged the roof of Bellina's house, as well as several nearby buildings.[2] Defendant Liberty Personal Insurance Company insured Bellina's home.[3] Liberty "engaged Envista Forensics to perform an inspection and adjustment

---

[1]   R. Doc. 8.
[2]   *See* R. Doc. 1-1 at 1 ¶ III.
[3]   *See* R. Doc. 1-1 at 1 ¶ IV. Plaintiff incorrectly named defendant as Liberty Mutual Insurance Company in her state-court complaint. *See* R. Doc. 1 at 1; R. Doc. 1-1 at 1 ¶ IV.

of the claim."[4] Envista then sent defendant Jason Johnston to plaintiff's property to conduct the inspection.[5]

Bellina alleges that during this inspection, Johnston "intentionally, negligently and/or fraudulently ignored multiple and obvious damages to roof of the [h]ouse caused by hail for [d]efendant's monetary benefit."[6] Specifically, Bellina alleges that Johnston's inspection was "fatally flawed because . . . [he] chose to 'inspect' the main home's roof using a 'drone's' eye view and simply 'fly by' the [h]ouse and nothing else."[7] Bellina claims that "[t]his 'fly by' inspection . . . failed to reveal the damage caused by the hail storm."[8]

Bellina suggests, therefore, that Johnston should have "physically step[ped] up a simple latter to the roof of the [h]ouse to examine same reasonably with the 'human' eye and physically touch and observe the extent of the damage done to the roof by the hail storm."[9] Indeed, plaintiff hired an independent inspector,[10] who "actually performed a physical inspection of

---

[4]   *See id.* at 2 ¶ VII.
[5]   *See id.* at 2 ¶ VIII.
[6]   *See* R. Doc. 1-1 at 2 ¶ VIII.
[7]   *See id.* at 3 ¶ IX.
[8]   *Id.* at 3 ¶ X.
[9]   *See* R. Doc. 1-1 at 3 ¶ IX.
[10]  *See id.* at 3 ¶ XI.

2

the all roof structures by hand,"[11] and concluded that the damage was due to hail.[12]

Bellina alleges that based on Johnston's report, Liberty "found every other building was damaged by hail, but denied any damage to the [h]ouse and denied [her] claim in that regard."[13] Liberty agreed with the finding that the adjacent buildings, which were inspected physically, were damaged due to hail.[14] But Liberty has "refused to acknowledge any damage to the main [h]ouse's roof," which is the "most expensive."[15]

Plaintiff filed suit in state court against Liberty and Johnston for "the cost of repairing or replacing her [six] roofs," and against Liberty for "bad faith and arbitrary failure to pay and/or timely pay this claim."[16] Liberty removed the suit on the basis of diversity jurisdiction.[17] Liberty acknowledged that Johnston was not diverse,[18] but contended that he was

---

[11] *See id.* at 3 ¶ XII.
[12] *See id.*
[13] *See* R. Doc. 1-1 at 3 ¶ X.
[14] *See id.* at 3-4 ¶ XIII.
[15] *See id.* at 4 ¶ XIII.
[16] *See* R. Doc. 1-1 at 5.
[17] *See* R. Doc. 1 at 3 ¶ 11.
[18] *See id.* at 5 ¶ 22. In its notice of removal, Liberty referred to Johnston as "Johnson." *See id.* at 2 ¶ 5.

improperly joined,[19] as Bellina could not state claim against him.[20] Plaintiff now moves to remand.[21]

## II. LEGAL STANDARD

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). "[T]he removing party bears the burden of . . . show[ing] that federal jurisdiction exists." *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). And "[t]he jurisdictional facts that support removal must be judged at the time of removal." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). In assessing whether removal is appropriate, the Court is guided by the principle that removal statutes should be strictly construed. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Accordingly, "[a]ny ambiguities are construed against removal." *Id.*

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*,

---

[19] *See id.* at 5-6 ¶¶ 22-26.
[20] *See id.* at 5 ¶¶ 23-24, 6 ¶ 26.
[21] R. Doc. 8.

4

437 U.S. 365, 373 (1978). Having a plaintiff and a defendant who are citizens of the same state would ordinarily destroy complete diversity. *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). Therefore, when a nondiverse party is properly joined as a defendant, no defendant may remove the case under 28 U.S.C. § 1332.

A defendant may remove, though, by showing that the nondiverse party was joined improperly. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). But "[t]he party seeking removal bears a heavy burden." *Id.* at 574. A defendant can establish improper joinder by demonstrating either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)). To determine improper joinder under the second element, the Court asks "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*

"In analyzing whether a plaintiff has demonstrated a reasonable possibility of recovery, the district court may 'conduct a Rule 12(b)(6)-type

analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.'" *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 69 (5th Cir. 2010) (per curiam) (quoting *Smallwood*, 385 F.3d at 573). The scope of the inquiry for improper joinder can be even broader than for Rule 12(b)(6), because when a plaintiff "has misstated or omitted discrete facts that would determine the propriety of joinder," the Court may "pierce the pleadings and conduct a summary inquiry." *See Smallwood*, 385 F.3d at 573; *see also Menendez*, 364 F. App'x at 69.

In conducting this inquiry, the Court must "take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. So, too, must the Court resolve all "contested issues of fact" and all "ambiguities of state law" in favor of the party opposing removal. *See id.*; *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 813 (5th Cir. 2011).

## III. DISCUSSION

Plaintiff requests that the Court remand this suit for two reasons: (a) because Johnston was not improperly joined,[22] and (b) because Liberty's notice of removal was defective.[23]

### A. Improper Joinder

The Court finds that there is no reasonable basis to predict that Bellina might be able to recover against Johnston. As Johnston is the only non-diverse defendant, the Court does not lack diversity jurisdiction, and remand on this basis is not appropriate.

Bellina's complaint[24] and opposition[25] suggest that Johnston faces liability in his role as the insurance adjuster for her claim. For instance, plaintiff alleges in her complaint that Johnston "intentionally, negligently and/or fraudulently ignored multiple and obvious damages to [the] roof of the [h]ouse."[26] But "[u]nder Louisiana law, 'there is generally no cause of action against an insurance adjuster for processing and handing an insurance claim.'" *Hoffman v. Ellender*, No. CIV.A. 15-309-JWD, 2015 WL 4873342, at *4 (M.D. La. July 23, 2015) (quoting *Munsterman v. State Farm*

---

[22] *See* R. Doc. 8-1 at 3-8.
[23] *See id.* at 2-3.
[24] *See, e.g.*, R. Doc. 1-1 at 2 ¶ VIII.
[25] *See, e.g.*, R. Doc. 8-1 at 5.
[26] *See* R. Doc. 1-1 at 2 ¶ VIII.

7

*Fire & Cas. Co.*, No. 06-8722, 2007 WL 29183, at *2 (E.D. La. Jan. 3, 2007)), *report and recommendation adopted*, No. CIV.A. 15-309-JWD, 2015 WL 4873350 (M.D. La. Aug. 13, 2015); *see also Edwards v. Allstate Prop. & Cas. Co.*, No. 04-2434, 2005 WL 221560, at *3 (E.D. La. Jan. 27, 2005) (collecting cases).

Bellina specifically complains that Johnston did not climb to the roof to inspect it, and instead viewed the roof with a drone.[27] But "disagreement with [the] method of adjusting claims and ultimate claims decision," by itself, "cannot form the basis of a claim against [an adjuster] under Louisiana law." *See Hoffman*, 2015 WL 4873342, at *6 (citing *Munsterman*, 2007 WL 29183). Indeed, even assuming Johnston's method was "substandard,"[28] as Bellina alleges, "no case impos[es] a duty on an independent insurance adjuster to an insured to conduct a proper investigation." *Rich v. Bud's Boat Rentals, Inc.*, 1997 WL 785668, at *3 (E.D. La. Dec. 18, 1997).

In *Hoffman*, for instance, even though following a "verbal altercation," the adjuster allegedly "retaliate[ed]" against the claimant by "plac[ing] roadblocks into the path of [the claimant's] recovery, causing undue delays and ultimately a denial of the claims," the court did not find a basis for

---

[27]   *See* R. Doc. 1-1 at 2-3 ¶¶ VIII-IX.
[28]   *See id.* at 3 ¶ X.

8

liability. *See* 2015 WL 4873342, at *5-6 (quoting Petition ¶¶ 13, 15). Here, Bellina's far less egregious allegations based on criticisms of the method the adjuster used to inspect her roof likewise do not state a claim against Johnston.

Nor do Bellina's allegations state a claim in the scenarios in which courts have found an exception to the general rule that insurance adjusters do not face liability for handling claims. "An insurance adjuster may be held liable under Louisiana law . . . 'where he has engaged in fraud toward the claimant or where he has provided the claimant false information regarding the potential success of the claim and has reason to know that the claimant will rely on that information.'" *Hoffman*, 2015 WL 4873342, at *5 (quoting *Munsterman*, 2007 WL 29183, at *1).

Bellina conclusorily alleges that Johnston "fraudulently underperform[ed] his duties."[29] But, under Louisiana law, "delictual fraud or intentional misrepresentation" requires "(1) misrepresentation of a material fact; [2] made with the intent to deceive; and (3) causing justifiable reliance with resultant injury." *Murungi v. Tex. Guaranteed*, 693 F. Supp. 2d 597, 604 (E.D. La.) (citing *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999)), *aff'd*, 402 F. App'x 849 (5th Cir. 2010). Furthermore,

---

[29] R. Doc. 1-1 at 2 ¶ VIII.

Rule 9 requires that when "alleging fraud . . . , a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Indeed, "[t]he Fifth Circuit 'interprets Rule 9(b) strictly, requiring a plaintiff [who pleads] fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Murungi*, 693 F. Supp. 2d at 602 (second alteration in original) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)).

Bellina does not plead fraud with any particularity. Her complaint suggests that Johnston "fraudulently underperform[ed] his duties" by "refus[ing] to observe/inspect for the damages."[30] In other words, the basis for her allegation of fraud is that Johnston "failed so much as climb a ladder to the roof and/or make a physical inspection of the roof,"[31] instead using a drone.[32] But Bellina does not plead how Johnston's alleged failure to use a ladder constitutes a representation—much less a misrepresentation—of material fact. Nor does she plead how she relied on any alleged representation. To the contrary, her pleading reveals that rather than rely on Johnston's investigation, she hired an independent adjuster to submit an

---

[30] R. Doc. 1-1 at 2 ¶ VIII.
[31] *See id.*
[32] *See id.* at 3 ¶ IX.

10

inspection report to Liberty.[33]  Consequently, Bellina does not state a cognizable fraud claim against Johnston.

Bellina appears to concede in her reply memorandum that Johnston did not make a false statement. Rather, plaintiff argues that by "[p]resenting his report as complete, Johnston remained silent about failing to personally see or touch any part or portion of [p]laintiff's slate roof."[34] In other words, Bellina contends that she has "pleaded Johnston's *silence*."[35]  But her complaint does not reference with particularity any material omission or misrepresentation about the completeness of Johnston's report. Rather, her pleadings fault the manner in which Johnston performed the inspection, not any specific material misrepresentation by statement or omission.

Bellina's fraud by silence theory is also defective because Johnston owed her no duty to speak. "[A] plaintiff alleging fraud by silence should be able to allege the following with reasonable particularity: (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information." *Chrysler Credit Corp. v. Whitney Nat'l Bank*,

---

[33]  *See id.* at 3 ¶¶ XI-XII.
[34]  *See* R. Doc. 18 at 2.
[35]  *See id.* at 2-3.

824 F. Supp. 587, 598 (E.D. La. 1993) (citation omitted). Here, plaintiff cannot establish that Johnston owed her a duty. "It is well-settled in Louisiana . . . that there is no fraud by silence unless there is a duty to speak." *Id.* at 598 n.9 (citing *Greene v. Gulf Coast Bank*, 593 So. 2d 630 (La. 1992)). But again, "no case impos[es] a duty on an independent insurance adjuster to an insured to conduct a proper investigation or to advise an insured of coverage issues." *Rich*, 1997 WL 785668, at *3. No matter the conclusory labels used, the substance of plaintiff's allegations fails to state a claim against Johnston.

The cases cited by Bellina to argue that Johnston does owe her a duty are inapposite. For instance, plaintiff cites *Graves v. State Farm Mut. Auto Ins. Co.*, 821 So. 2d 769 (La. App. 3 Cir. 2002), for the proposition that an insurance adjuster "*is* legally responsible for his fault or neglect."[36] But *Graves* addresses the duty that an insurance agent—not an adjuster[37]—owes to the insured. *See, e.g., id.* at 772 ("[T]he duty imposed on the insurance

---

[36] *See* R. Doc. 8-1 at 5. Plaintiff appears to provide an incorrect volume number when citing this case.

[37] While an insurance "agent" is not the same as an insurance "adjuster," an "adjuster" is the same as an "investigator." *See Hoffman*, 2015 WL 4873342, at *5 ("[T]he Fifth Circuit has interchangeably described an employee of an insurer sent to investigate a claim as an 'investigator/adjuster.'" (citing *Brown ex rel. Tracy v. Liberty Mut. Fire Ins. Co.*, 168 Fed. App'x. 558, 560 (5th Cir. 2006))).

agent is to obtain the coverage desired by the customer." (emphasis removed)). But while an insurance agent has an agency relationship with the insured and thus may owe her a duty, "an adjustor is an agent for the insurer and does not generally owe a duty to the insured." *Marketfare Annunciation, LLC v. United Fire & Cas. Co.*, No. 06-7232, 2007 WL 837202, at *1 (E.D. La. Mar. 15, 2007); *see also see Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 204 (5th Cir. 1990) ("Under Louisiana law, an insurance broker is generally deemed to be the agent of the insured rather than the insurer."); *Rosinia v. Lexington Ins. Co.*, 2006 WL 3141247, at *2 (E.D. La. Oct. 31, 2006) ("[N]othing in the statute [regarding the proper handling of insurance claims] suggests that the Louisiana Legislature intended that the duties imposed on insurers be relegable to adjustors.").

Plaintiff also relies on *McCarter v. Progressive Gulf Ins. Co.*, No. 11-2646, 2011 WL 6130769 (E.D. La. Dec. 7, 2011), to suggest that a tort duty could be implied here. But in *McCarter*, the plaintiff alleged that the adjuster took advantage of him by "misrepresent[ing] the terms of [a] proposed settlement agreement," even though the adjuster knew the claimant was "neurologically impaired." *See id.*, at *4. Here, Bellina does not allege more than "run-of-the-mill claims concerning an adjuster's breach of duty for failure to fairly adjust a claim." *See id.* There is no basis in the complaint to

13

suggest that any of the factors cited in *McCarter* have any basis here—that is, "relative education of the parties, the diligence of the claimant in seeking the facts, the actual or apparent authority of the adjuster, the content of his promises to the claimants, misrepresentation or fraud." *Id.* (quoting *Pellerin v. Cashway Pharmacy of Franklin, Inc.*, 396 So. 2d 371, 373 (La. App. 1 Cir. 1981)). *McCarter* is of no help to Bellina.

The complaint, therefore, does not indicate grounds for Johnston to owe a duty to Bellina. And absent such a duty, the complaint does not provide a reasonable basis for the Court to predict that Bellina might be able to recover against Johnston. Thus, Johnston is improperly joined, and remand is not appropriate.

### B. Defective Notice of Removal

Bellina also argues that "defects" in the notice of removal support remand.[38] First, Bellina claims that Liberty did not file a copy of her state complaint with the notice of removal, but rather only attached blank pages.[39] Contrary to Bellina's assertion, though, her complaint was filed into the record.[40] Second, Bellina generally argues that Johnston has not consented

---

[38] *See* R. Doc. 8-1 at 2-3.
[39] *See id.*
[40] *See generally* R. Doc. 1-1.

14

to removal.[41] More specifically, Bellina argues that Liberty did not provide Johnston with the notice of removal,[42] and that in the notice of removal Liberty falsely states that Johnston was not served.[43] But Liberty represents that "the service return on Johnston was not filed at the time Liberty removed this action and, thus, Liberty was unaware that Johnston had been served."[44] And in any event, because the Court has found Johnston improperly joined, he need not consent to removal. *See* 28 U.S.C. § 1446(b)(2)(A) ("[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action."); *Escuadra v. Geovera Specialty Ins. Co.*, 739 F. Supp. 2d 967, 974 (E.D. Tex. 2010) ("[I]mproperly joined defendants need not consent to removal." (citing *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993))). As such, the Court does not find that these alleged defects support remand.

### C. Costs

Finally, the Court notes that Bellina moves for costs.[45] Because the Court has not entered "[a]n order remanding the case," *see* 28 U.S.C. § 1447(c), there is no basis to award plaintiff costs.

---

[41] *See* R. Doc. 8-1 at 3
[42] *See id.*
[43] *See id.*; *see also* R. Doc. 1 at 3 ¶ 15; R. Doc. 8-2.
[44] *See* R. Doc. 11 at 9.
[45] *See* R. Doc. 8 at 1.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion to remand. Plaintiff's claims against Johnston are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this ___7th___ day of April, 2020.

_____*Sarah Vance*_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE