UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| DEBORAH BELLINA, | * | CIVIL ACTION NO.: 2:19-CV-13711 |
|     PLAINTIFF | * |  |
|  | * |  |
| VERSUS | * | JUDGE: SARAH VANCE |
|  | * |  |
| LIBERTY MUTUAL INSURANCE | * |  |
| COMPANY, | * | MAG. JUDGE: DANA DOUGLAS |
|     DEFENDANT | * |  |

**************************************************************************

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* AND TO ESTOP DEFENDANT'S SUGGESTION THAT THERE WAS NO HAIL/NOT "BIG ENOUGH" HAIL TO DO DAMAGE AS TO EACH EXPERT**

**NOW INTO COURT**, through undersigned counsel, comes the Plaintiff Deborah Bellina ("Bellina"), and respectfully moves this Honorable Court for an Order limiting the testimony of Defendant's three experts Dr. Lee Branscome, CCM ("Dr. Branscome"), Jason Johnston ("Johnston") and F Dirk Carvajal ("Carvajal") on suggestion to the court that the "weather expert", *cannot*, but non the less attempts to, reach the ultimate issue of whether the hail storm *could* have done the documented hail damage to the cement shingles. While Johnston and Carvajal, who failed to conduct a hands-on inspection, and don't have the qualifications to determine the cause of damage, could not find hail damage using a fly by drone inspection but then blamed documented cement shingles damage on fantom roof repairmen.

Further, Defendant should be estopped from suggesting that there was no hail storm after the Defendants adjuster documented same having destroyed (beyond repair) 4 out of 5 roofs on the property and adjusted those roofs as a total loss due to documented hail damage, declared it as fact

to the insured in writing and processed the claim on that basis before suit was filed all as set forth below.

## I.    BACKGROUND

On or about 18 of January of 2019, as Mrs. Bellina returned from an out of town vacation whereupon she discovered a noticeable and unusual degree of debris in her driveway and yard as if there had been a substantial rain or hail storm in the area. In particular she noticed pieces of her home's shingles mixed in with the usual and expected branches and leaves in her driveway. She contacted her roofing company (Allstar) and they came to the property and suggested she make a claim for damages to the roof as same appeared to have been damaged by hail.

She took that advise and called the Defendant insurer who sent out an adjuster Katie French. That adjuster and her inspection documented hail damaged that was so extreme that 4 out of 5 of the traditional 3-tab roof shingled structures on the property had to be completely replaced (see Katie French LETTER DATE 2-26-2019 attached as Exhibit 1). The adjuster then called for a separate inspection of the main roof. That last roof was Mrs. Bellina's main structure and home and had artificial cement shingles.

This inspector was Jason Johnston (retained by defendant separately rather than another of Defendant's adjusters) appeared for the inspection but instead of climbing on the roof himself, and inspecting the roof "by hand" employed a drone to fly by the roof to take photo observations. It was his opinion, "*from what he could see*" that the roof had no damage from the hail storm but rather he speculated all the damage he could see was attributable to foot traffic of prior and unknown roof repair company personnel because the age and nature of this older roof tile rendered it fragile.

Understandably, Mrs. Bellina wanted a second opinion, at lease to understand that how 4 of her 5 roofs could have been destroyed by hail, and yet her main roof was *without any* damage (see dollar totals on Exhibit 1 and photos Exhibit 2).

She retained a local construction company owner and longtime insurance adjuster Brandon Simoneaux who *actually* got up *on* the roof and preformed a "hands on examination" during which he found fresh physical damage cause by hail and documented same, such as dimples in roof metals in photographs.

The Defendant has produced one weather expert who, upon his report, appears that cast doubt that the hail in question could not have caused the damage in question without seeing the damage and without any (according to his CV Attached as Exhibit 3) knowledge of the mechanics of hail damage or qualifications or experience to comment on same. While he may suggest there was not a lot of hail or that the hail was not "big" enough the ultimate question as this is clearly beyond his expertise and as a meteorologist and while he can engage in speculation as to whether hail existed, he *cannot* claim to know it was "pea sized" (see Exhibit 7), but more importantly he *cannot s*peculate about what damage this hail "could have done", as he does not have the experienced and has no specialized training as to what damage can and *cannot* be caused by hail "mechanically". This speculation does not assisted the court, More importantly, as is often the *temptation* with most experts, he may not reach the ultimate issue of whether (no pun intended) the hail did or did not do the damage complained of at the Bellin home because he is not an engineer and has not studied any of the admittedly hail damaged shingles nor has he studied the artificial shingles said by the defendant not to have been damaged. He should not be allowed by the Court to make this analysis.

The other two "experts" (one who authored the first fly by inspection Johnston and the other who was called upon to verify same Carvajal) while having a PE behind their names have no experience or specialized education or  training in the type of artificial slate roofs in question here or how/why they fail and more particularly why "these" shingles of this age and type failed have offered nothing in their training or experience to support same (see CV Exhibits 4 and 5).

Johnston:

Has never qualified as an expert;

Has only seen two cement shingle roofs in his life;

Works only for insurers and;

 Has never found hail damage in his career and;

Only had 7 years of any sort of field experience

Has no specialized education on singles or damage caused by hail.

Worse, he admitted in his deposition that his fly by inspection did not find damage on the roof like dimpling of metal surfaces that he admitted was constant with hail damage and actually present on the roof and in photos taken by Ms. Bellina's inspector during his actual hands-on inspection.

Carvajal:

Has never qualified as an expert regarding roof damage caused by hail;

Works only for insurers and;

 CV show specialized knowledge of cement shingles or hail investigation;

Has no specialized formal education on singles or damage caused by hail.

Worse, he also did not find damage on the roof (like documented dimpling of metal surfaces)

that he his fellow expert admitted was constant with hail damage and actually present on the roof and in photos taken by Ms. Bellina's inspector during his actual hands-on inspection. His CV indicates he is an engineer that has done slip and fall defense work but not storm damage investigation. His report simply agrees with the first report (from fellow company employee Johnston) but he made no independent investigation by looking at the same drone footage and certainly made no independent hands on investigation.

## II. ARGUMENT & AUTHORITY

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. The rule provides that an expert may provide expert testimony if:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, the Supreme Court imposed a "gatekeeping" obligation upon courts to ensure that such testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *see also Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). Further, the party offering the expert opinion bears the burden of showing by a preponderance of the evidence that the expert's testimony is reliable and relevant. *Snider v. New Hampshire Insurance Company*, Civil Action NO. 14-2132, 2016 WL 3193473 at *1 (E.D. La. June 9, 2016) (*citing Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002)).

### III. CONCLUSION

Dr. Lee Branscome, CCM performed an analysis of the weather in the area and could *not* rule out hail, but then suggested pea size hail could not do the damages in question; however, he did not perform any examination of the roofing materials nor has he the training or experience listed in his resume to make any analysis, much less reach the ultimate question, of if the shingle damaged to the main roof was caused by hail. Accordingly, any testimony that is beyond the scope of the weather, exceeds what is allowed under *Daubert*. Any testimony that goes beyond simple historic weather data in the area (which anyone can obtain) and concerning what damage *could* be done is both unreliable and not based on any facts or data, and should be excluded by this Honorable Court.

So too, the other two experts do not have the experience or training or education to differentiate hail damage from damage caused by phantom roofers and both missed the now documented and admitted damage in the first place because they are either biased or incompetent (although not having gotten on the roof how could they do a proper inspection) Neither can assist the court in determining whether the documented damage to the main roof was caused by hail. It does strike one as HIGHLY unusual that 4 out of 5 roofs could be destroyed while the 5th has NO damage and these experts *make no attempt to explain this phenomenon* rendering their testimony at odds with the Defendant's adjuster and logic.

Lastly, Defendant should be estopped from suggesting that there was no hail storm or hail in the area after the Defendants adjuster documented same, conveyed this fact in writing and adjusted the claim on that basis (see Exhibit 1, 2 and 6). The only question is the degree of damage to the mains structure and cost of all repairs.

Date:   12-2-2020                                  Respectfully Submitted:

                                                    /s/ *Paul A. Lea, Jr.*
                                                   **PAUL A. LEA, JR. (#18637)**
                                                   PAUL A. LEA, JR., APLC
                                                   229 N. Vermont Street
                                                   Covington, Louisiana 70433
                                                   Telephone: (985) 292-2300
                                                   Facsimile:  (985) 249-6006
                                                   Email:        paul@paullea.com

                                                   ***Attorney for Plaintiff, Deborah Bellina***


                      **CERTIFICATE OF SERVICE**

        I hereby certify that on this  2nd   day of December, 2020 a copy of the foregoing
was electronically filed with the Clerk of Court using the CM/ECF system. Notice of the filing
will be sent to all counsel of record, by operation of the Court's electronic filing system, which
sent notice to the below counsel of record.


                                                    /s/*Paul A. Lea, Jr.*
                                                   **PAUL A. LEA, JR.**